UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| STEPHEN GEROME,<br><br>        Plaintiff,<br><br>v.<br><br>BALL CORPORATION,<br>an Indiana corporation,<br><br>and<br><br>BALL ADVANCED ALUMINUM<br>TECHNOLOGIES CORP.,<br>a Delaware corporation,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 5:22-CV-00024<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

COMPLAINT
(Jury Trial Demanded)

The Plaintiff, Stephen Gerome ("Gerome" or "Plaintiff"), by counsel, complaining of the Defendants Ball Corporation ("Ball Corporation") and Ball Advanced Aluminum Technologies Corp. ("Ball Advanced") (together referred to as "Defendants"), alleges and says:

NATURE OF THE ACTION

1.      Gerome, who was 52 years old when he was fired by Defendants, brings this action for legal and equitable relief to correct and remedy his employers' unlawful employment practices during the course and in the termination of his employment. Gerome brings this action to make him whole and compensate him for Defendants' violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and/or the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* (the "ADA").

1

## JURISDICTION AND VENUE

2. Jurisdiction is founded in this case upon 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 12117, and 42 U.S.C. § 2000e, *et seq*. The demand for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3. Gerome was employed by Defendants who were his joint employers for more than seven years within this District and Division, and venue is proper within this District and Division pursuant to 28 U.S.C. § 1391(b) and (c).

## ADMINISTRATIVE PROCEEDINGS

4. Gerome timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) including the discrimination complained of herein on November 23, 2021. A true copy of the Charge is attached hereto marked Exhibit 1 and is incorporated herein by reference. The EEOC issued and mailed Gerome a Determination and Notice of Rights letter dated January 31, 2022 informing him that he had 90 days from his receipt of the letter within which to file suit.

5. Gerome received the Dismissal and Notice of Rights letter on or after January 31, 2022 and has initiated this action within 90 days of the date that he received the letter.

6. All administrative conditions precedent to the filing of this lawsuit have been performed or have occurred.

## PARTIES

7. Gerome is a 53-year-old white male. At the time of the illegal termination of his employment complained of in this action, Gerome was 52 years old. He is a citizen of the United States and a resident of Harrisonburg, Virginia.

8. Defendant Ball Corporation is a stock corporation organized and existing under the laws of the State of Indiana and is authorized to transact business in the Commonwealth of Virginia. Defendant Ball Advanced Aluminum Technologies Corp. is a stock corporation organized and existing under the laws of the State of Delaware. Defendants maintain a place of

business in Verona, Augusta County, Virginia. Both Defendants have their principal offices located at 9200 W. 108th Circle, Westminster, Colorado. Defendants are and at all times relevant to the matters alleged herein were engaged in the fabrication and sale of metal packaging for beverage, food and household products customers and of aerospace and other technologies primarily for the U.S. government.

9. At all times relevant to the matters alleged herein, each of the Defendants was an employer engaged in an industry affecting commerce with more than 500 employees for each working day in each of twenty or more calendar weeks in each relevant calendar year, and each is an employer under and subject to the provisions of Title VII and the ADEA.

10. At all times relevant to the matters alleged herein, Defendants' agents and employees were acting during the course and within the scope of their employment or agency and with the knowledge and consent of Defendants.

FACTS

11. Gerome began his employment with Ball Advanced Aluminum Technologies Corp. on April 22, 2013 as the human resources ("HR") manager at the manufacturing facility in Verona, Virginia operated by Defendants. Defendant Ball Corporation, which is affiliated with Defendant Ball Advanced, paid Gerome's salary, and its managing employees and agents were involved directly in decisions relating to the operation of the manufacturing facility and its managing employees, including Gerome.

12. Together, the Defendants jointly employed Gerome.

13. Gerome performed his job well and received periodic increases in pay.

14. Defendants had employed an Environmental Health and Safety official ("EHS") who worked with Gerome at the Verona plant facility. That official was responsible for, among other things, safety issues at the plant and handling of workers injuries. A few years before the

illegal termination of Gerome's employment in January 2021, the Defendants terminated the EHS official.

16. After the EHS official was terminated, Defendants gave Gerome the EHS duties in addition to his duties as HR manager.

16. Gerome continued to perform his job well and met or exceeded the legitimate expectations of Defendants.

17. The result of being assigned two sets of job duties was to impose an unreasonable amount of work on Gerome. At his performance reviews in both 2018 and 2019, Gerome addressed the amount of work he was being required to perform. His supervisor directed him to do fewer EHS duties and focus more on HR. Gerome received assurance in August 2019 that he would receive assistance with the EHS duties. That assurance was confirmed by Susan Normington, Defendants' manager, in the fall of 2019 when she said "we are working on a plan to resolve that problem."

18. Defendants knew that they were imposing duties of two positions on Gerome from statements confirming such knowledge by its managers to Gerome. In addition, after Gerome was fired illegally on January 28, 2021, Defendants replaced him with two employees, one as HR and the other as the EHS official.

19. In May 2020, Gerome experienced a family tragedy when his step-daughter died. He struggled to cope emotionally with that loss of which Defendants were aware.

20. Gerome sought counseling through Defendants' EAP program. He informed his supervisor, Paula Thoennes, in the summer of 2020 that he was struggling to cope with the loss and that the loss was adversely affecting him.

21. Ms. Thoennes paid lip-service to getting Gerome help with his dual-position duties, but Defendants took no effective action, and he was still charged with all of the responsibilities he had had previously.

22. Defendants simply failed and refused to provide the assistance they had promised with the double duties they were requiring of Gerome.

23. Gerome's request for help with his duties was a request for a reasonable accommodation for a mental health condition that constituted a substantial impairment of a major life activity under the Americans With Disabilities Act. Alternatively, Defendants regarded Gerome as being so impaired.

24. During early and mid-2020, Defendants announced that they were working on a diversity plan to implement at their plants (the "diversity plan"). As that "diversity plan" was implemented, it resulted in ridding Ball Corporation and Ball Advanced of many white male managers to reach certain arbitrary quotas, and Gerome was a prime target for this plan.

25. In September 2020, there was a COVID-19 outbreak at Defendants' Verona plant. Gerome was forced to assume even more responsibilities due to this outbreak. This was causing additional stress on top of what Gerome had been experiencing due to the death of his step-daughter and the effects of that tragedy on his family. Again, Gerome asked Ms. Normington and Ms. Thoennes for assistance as a result, and the response was: "[w]e're working on that."

26. In October 2020, there was a workplace injury to an employee at Defendants' Verona plant. Gerome was not working at the plant when the injury occurred. A supervisor on duty at the time of the injury, not Gerome, was required to enter certain information relating to the injury into the Defendants' computer software system, known as the Perillon system. The Perillon

system is EHS management software that, among other things, centralizes regulatory compliance, data input, and activities.

27. Upon being advised of the situation when Gerome arrived at work the next day, Gerome responded appropriately in accordance with Defendants' policies regarding the type of injury that had occurred.

28. An investigation ensued, led by Ms. Thoennes. Gerome was required to go to the plant in mid-December, 2020 to bring in employees to speak with Ms. Thoennes during the investigation.

29. During one call with Ms. Thoennes, she told Gerome that "I didn't want you to have a heart attack" when she scheduled him for an investigation call with investigators from Ball Corporation's legal department. This statement was repeated on January 28, 2021 when Gerome was terminated from his job and was a reference to Gerome's health condition, or a health condition he was regarded by his employer as having due to the mental health condition it perceived him to have.

30. In late December, 2020 Gerome and his wife both contracted COVID-19. Gerome quarantined for ten days. He returned to work on January 4, 2021 but with lingering effects of the virus.

31. In or around mid-January 2021, Gerome was interviewed again about the October 2020 workplace injury that occurred when he was not on duty. Gerome provided truthful information available to him about the injury and the reporting of the injury.

32. On January 28, 2021, Ms. Thoennes and Michael Martini, both regional HR managers, came to Defendants' Verona plant and met with Gerome. Ms. Thoennes prefaced the meeting with the statement "I hope you don't have a heart attack" by seeing us show up like this.

She then proceeded to summarily terminate Gerome's employment. Ms. Thoennes refused to give specifics of the reason for the termination. She related the termination generally to responses he had given during the investigation of the workplace injury, stating it was for not giving an honest answer during the investigation.

33. Gerome gave only honest answers during the investigation of the October 2020 workplace injury. He also had followed Defendants' policies and procedures in relation to the injury. Gerome asked Ms. Thoennes what it was that they asserted was the basis for her statement used to purportedly justify the termination. Ms. Thoennes said: "I can't divulge that."

34. Defendants continue to refuse to provide any factual basis for the termination of Gerome's employment. There is no valid justification for the termination of his employment, and Defendants' contention that he did not give an honest answer during the investigation of the October 2020 workplace injury is false and otherwise pretextual.

35. Following the termination of Gerome's employment, Defendants replaced Gerome with two people: an African American male who was hired to fill the EHS position and a white female who was hired to fill Gerome's HR position. This concluded the "fix" the Defendants had been working on in its drive to so-called diversity at the Verona plant, all at the expense of Gerome based on his race, white, his sex, male, and/or his disability, or a combination of those protected characteristics.

COUNT I-Violations of Title VII
(Sex Discrimination)

36. Gerome incorporates by reference and realleges the foregoing paragraphs as if fully set forth here.

37. Gerome was an "employee" of Defendants within the meaning of Title VII, 42 U.S.C. § 2000e(f).

38. Each Defendant was and is an employer engaged in an industry affecting commerce with 15 or more employees for each working day in each of twenty or more calendar weeks in each relevant calendar year, and each Defendant was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b) at all times relevant to the matters alleged herein.

39. Gerome was experienced, skilled and proficient as an HR manager and in the additional duties of EHS official he was required to perform. He was performing in accordance with the legitimate expectations of Defendants when his employment was terminated.

40. Defendants discriminated against Gerome with respect to the terms, conditions and privileges of his employment in violation of Title VII and terminated his employment because of his sex.

41. Defendants' conduct was disparate, intentional, deliberate, and willful. Defendants engaged in the practices complained of herein with malice and/or with such reckless indifference to Gerome's federally protected rights so that he is entitled to the recovery of punitive damages.

42. As a result of Defendants' intentional discrimination based on sex, Gerome has suffered, continues to suffer, and will in the future suffer great emotional distress, anxiety, stress, embarrassment, humiliation, pain, suffering, damage to reputation, loss of enjoyment of life, and economic harm.

43. By reason of Defendants' sex discrimination, Gerome has suffered damages and is entitled to all legal and equitable remedies available under 42 U.S.C. § 2000e, *et seq.,* including, but not limited to, declaratory and injunctive relief, back pay and benefits, compensatory damages, punitive damages, reinstatement into a position he would be holding but for Defendants' discriminatory conduct (or, alternatively, front pay and benefits if reinstatement is found to be impractical or would subject Gerome to hostility), and any other legal or equitable relief as the Court deems appropriate.

<u>COUNT II-Violations of Title VII</u>
<u>(Race Discrimination)</u>

44. Gerome incorporates by reference and realleges the foregoing paragraphs as if fully set forth here.

45. Gerome was an "employee" of Defendants within the meaning of Title VII, 42 U.S.C. § 2000e(f).

46. Each Defendant was and is an employer engaged in an industry affecting commerce with 15 or more employees for each working day in each of twenty or more calendar weeks in each relevant calendar year, and each Defendant was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b) at all times relevant to the matters alleged herein.

47. Gerome was experienced, skilled and proficient as an HR manager and in the additional duties of EHS official he was required to perform. He was performing in accordance with the legitimate expectations of Defendants when his employment was terminated.

48. Defendants discriminated against Gerome with respect to the terms, conditions and privileges of his employment in violation of Title VII and terminated his employment because of his race in Defendants' pursuit of its diversity plan.

49. Defendants' conduct was disparate, intentional, deliberate, and willful. Defendants engaged in the practices complained of herein with malice and/or with such reckless indifference to Gerome's federally protected rights so that he is entitled to the recovery of punitive damages.

50. As a result of Defendants' intentional discrimination based on race, Gerome has suffered, continues to suffer, and will in the future suffer great emotional distress, anxiety, stress, embarrassment, humiliation, pain, suffering, damage to reputation, loss of enjoyment of life, and economic harm.

51. By reason of Defendants' race discrimination, Gerome has suffered damages and is entitled to all legal and equitable remedies available under 42 U.S.C. § 2000e, *et seq.,* including, but not limited to, declaratory and injunctive relief, back pay and benefits, compensatory damages, punitive damages, reinstatement into a position he would be holding but for Defendants' discriminatory conduct (or, alternatively, front pay and benefits if reinstatement is found to be

impractical or would subject Gerome to hostility), and any other legal or equitable relief as the Court deems appropriate.

### COUNT III-Violations of the ADA

52. Gerome incorporates by reference and realleges the foregoing paragraphs as if fully set forth here.

53. The ADA Amendment Act of 2008 (ADAAA) applies to Gerome's ADA claims of failure to accommodate and wrongful termination because Defendants' actions took place after the effective date of the ADAAA. Pub. L. 110-325, § 8, 122 Stat. 3553 (Sept. 25, 2008), codified at 42 U.S.C. § 12101 (Note). Under the ADAAA, Gerome's disability must be assessed without regard to the ameliorative effects of mitigating measures, including therapy.

54. At all relevant times, Gerome was able to perform the essential functions of his job with or without reasonable accommodation.

55. Defendants were aware of Gerome's health condition due to the loss of his step-daughter, and perceived Gerome to have disabling health conditions. Defendants' managing agent made at least two comments about, and perceived Gerome's health condition as subjecting him to, a serious heart condition that may cause a heart attack.

56. Among other things, Defendants:

   a. terminated Gerome's employment because of disability,

   b. terminated Gerome's employment because of Gerome's physical or mental impairments, or because they regarded or perceived Gerome as having a physical or mental impairments;

   c. terminated Gerome's employment on January 28, 2021 based on the perceived need to make reasonable accommodations because of Gerome's disability;

    d.  terminated Gerome's employment based on the need or perceived need to make reasonable accommodations in the future for Gerome's disability;

    e.  used Gerome's disability, whether actual or through a perception of disability and/or his record of having a substantial impairment of major life activities, as negative factors in consideration of his job performance and anticipated future performance;

    f.  failed to engage and/or continue to engage in a good faith interactive process with Gerome to determine the extent and nature of the necessary reasonable accommodations for Gerome's disability; and

    g.  otherwise discriminated against Gerome based upon disability under the ADA.

57. Defendants' adverse actions taken in connection with Gerome's employment were discriminatory and based on Gerome's disability.

58. Gerome was and is qualified for the jobs he was performing because he satisfies the skill, experience and other job-related requirements for the positions as well as other positions at Defendants.

59. At all relevant times, Gerome was able to perform the essential functions of the positions he was occupying with or without reasonable accommodation.

60. Defendants' intentional discrimination was with respect to terms, conditions, and privileges of Gerome's employment, caused Gerome damage during his employment, and resulted in the termination of his employment with Defendants because of disability.

61. As a consequence of Defendants' intentional discrimination based on disability, Gerome has suffered, continues to suffer, and will in the future suffer great emotional distress,

anxiety, stress, embarrassment, humiliation, pain, suffering, damage to reputation, and loss of enjoyment of life.

62. As a consequence of Defendants' actions, Gerome has lost wages and other financial incidents and benefits of employment, and Gerome will continue to suffer such losses.

63. As a consequence of the acts and omissions of Defendants, Gerome has incurred and will continue to incur attorneys' fees, costs, and other litigation expenses.

64. Defendants engaged in the practices complained of with malice or with reckless indifference to Gerome's federally protected rights under the ADA entitling him to the recovery of punitive damages.

## COUNT IV
### Combination or Intersectional Discrimination

65. Gerome incorporates by reference and realleges the allegations in the foregoing paragraphs as if fully set forth here.

66. Defendants have intentionally discriminated against Gerome in the terms, conditions and privileges of his employment because of his sex, race, and/or disability, which discrimination on such bases (or a combination of such bases so as to constitute combination or intersectional discrimination), constituted unlawful employment practices under Title VII and/or the ADA and included the unlawful termination of his employment.

67. As a consequence of Defendants' intentional discrimination, Gerome has suffered, continues to suffer, and will in the future suffer great emotional distress, anxiety, stress, embarrassment, humiliation, pain, suffering, damage to reputation, and loss of enjoyment of life.

68. As a consequence of Defendants' discriminatory actions, Gerome has lost his employment, has lost wages and other financial incidents and benefits of employment, and he will continue to suffer such losses in the future.

69.  Gerome is further entitled to equitable relief including reinstatement to his HR and/or EHS positions or to a reasonably comparable position with all benefits of employment restored, or in the alternative for an award of front pay and benefits.

70.  As a consequence of the acts and omissions of Defendants, Gerome has incurred and will continue to incur attorneys' fees, costs, and expenses.

71.  Defendants engaged in the discriminatory practices complained of with malice or with reckless indifference to Gerome's federally protected rights.

72.  Gerome is entitled to recover punitive damages in addition to the other damages he has suffered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Stephen Gerome demands judgment against Defendants Ball Corporation and Ball Advanced Aluminum Technologies Corp., jointly and severally, as follows:

(a)  For a declaration that the acts and practices complained of herein are in violation of Gerome's rights as secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and/or the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.*, and*;*

(b)  For an order reinstating Gerome to his position with Defendants or in a position with comparable duties and responsibilities and with equal pay and benefits as Gerome would have received but for Defendants' conduct in violation of the ADA and/or Title VII, and reinstating all benefits to which Gerome would have been entitled but for the termination of his employment, or in the alternative for an award of front pay and future benefits;

(c)  For a permanent injunction enjoining Defendants from any conduct violating Plaintiff's rights as secured by the ADA and/or Title VII;

(d)  For an award of back pay, prejudgment interest, and appropriate recovery for lost employment benefits and other affirmative relief as may be appropriate, and for all other wages and benefits denied or lost;

(e) For an award of compensatory damages under Title VII and/or the ADA in an amount to be determined by the jury;

(f) For an award of punitive damages under Title VII and/or the ADA in an amount to be determined by the jury;

(g) For an award of reasonable attorneys' fees and costs incurred in this action, together with expert witness fees and expenses;

(h) For an award in an amount necessary to offset the adverse tax consequences of an award received in a lump sum;

(i) For an award of post-judgment interest on any monetary award; and

(j) For any other relief this Court deems to be just and proper.

PLAINTIFF DEMANDS TRIAL BY JURY pursuant to Fed. R. Civ. P. 38.

STEPHEN GEROME

By: s/Timothy E. Cupp
Counsel

Timothy E. Cupp, VSB No. 23017
Shelley Cupp Schulte, P.C.
1951 Evelyn Byrd Avenue, Suite D
PO Box 589
Harrisonburg, Virginia 22803
(540) 432-9988
(804) 278-9634 (facsimile)
Email: cupp@scs-work.com

Tim Schulte, VSB No. 41881
Shelley Cupp Schulte, P.C.
3 West Cary Street
Richmond, Virginia 23220
(804) 644-9700
(804) 278-9634 (facsimile)
Email: schulte@scs-work.com
*Counsel for Plaintiff*